CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED /at Danville
JUL 17 2007
JOHN F. CORCORAN, CLERK
BY: /s/ [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| DARRYL D. MOOREFIELD[1], | CASE NO. 4:06CV00062 |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security[2], | By: B. Waugh Crigler<br>U. S. Magistrate Judge |
| Defendant. | |

This challenge to a final decision of the Commissioner which denied plaintiff's January 23, 2001 claim for a period of disability and disability insurance benefits under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will recommend that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment, and DISMISSING this action from the docket of the court.

In a decision dated July 17, 2002, an Administrative Law Judge ("Law Judge") found

---

[1] The undersigned notes that plaintiff's last name is spelled differently throughout the record. In some instances it is spelled "Moorefield," (R. 43, 139, 146) and in other instances, it is spelled "Morefield" (R. 20, 78, 207, 213, 224). According to the Complaint and the court's official docket sheet, plaintiff's last name is spelled "Moorefield." (Dkt. No. 3.)

[2] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for Commissioner of Social Security as the defendant.

that, while plaintiff suffered a back disorder, he possessed the residual functional capacity (RFC) to perform his past relevant work as a security supervisor, and as such, was not disabled. (R. 16-19.) Plaintiff sought review of this decision, which the Appeals Council denied on August 30, 2002. (R. 5-6.) Thereafter, plaintiff filed an action in this court seeking judicial review of the Commissioner's final decision. *See Morefield v. Barnhart*, 4:02CV00086 (November 14, 2003). On November 14, 2003, the Honorable Glen E. Conrad entered an order remanding the case for further proceedings.[3] (R. 271-272.) As a result, the Appeals Council vacated the Law Judge's July 17, 2002 decision and recommitted the case to the Law Judge for further proceedings. (R. 279-280.)

A supplemental hearing was held on November 17, 2004. (R. 214, 224-270.) The Law Judge issued a decision on February 3, 2005, in which he found that plaintiff had not engaged in substantial gainful activity since his alleged date of disability onset, May 12, 2000, and was insured for benefits through the date of the Law Judge's decision. (R. 215, 219.) The Law Judge further found that plaintiff had the following severe impairments: status post lumbar laminectomies at L4-5 times two; status post degenerative disc at L5-S1, with posterior herniation, but without definite effect on the exiting nerve roots, right or left; failed back syndrome with chronic low back, lumbosacral pain; transitional S1 vertebral body with slight retrolisthesis of L5 on S1; and left lumbar radiculopathy. (*Id.*) He determined that when these impairments were viewed individually or in combination, they were not severe enough to meet or equal any listed impairment. (*Id.*) The Law Judge was of the opinion that plaintiff's claims of

---

[3]Judge Conrad was unable to find that the Law Judge's decision was supported by substantial evidence, and was further unable to find that plaintiff had met his burden of proof. (R. 277.)

2

pain and functional debility were not credible, based on the objective medical evidence, all of the medical opinions, and the believability of his claims and allegations. (R. 217, 219.) The Law Judge further found that plaintiff retained the RFC to occasionally lift and carry objects weighing up to twenty pounds, to frequently lift and carry objects weighing less than ten pounds, to stand for up to two hours during the course of a workday, to alternate sitting with standing throughout the workday at will, though he noted that plaintiff's use of his lower extremities for pushing and/or pulling or for operating foot controls was limited, and he never could kneel, crouch or crawl. (R. 216, 220.) Because he found that the job of security supervisor, as is generally performed in the national economy, did not involve performing work-related activities which were precluded by plaintiff's RFC, the Law Judge determined that plaintiff could return to his past relevant work. (R. 218-220.) Thus, the Law Judge concluded that plaintiff was not disabled under the Act. (R. 219-220.)

Plaintiff appealed the February 3, 2005 decision to the Appeals Council. (R. 209.) The Appeals Council considered his arguments and found no reason to assume further jurisdiction after remand. (R. 201-204.) Thus, the Law Judge's February 3, 2005 decision became the final decision of the Commissioner, and this action ensued.

In the "Memorandum" filed in support of his motion for summary judgment, or in the alternative for remand, plaintiff initially argues that the Law Judge disregarded his complaints of pain and resulting limitations. (Plaintiff's Brief, pp. 15-19.) Specifically, plaintiff offers that the objective medical evidence of record accounts for his subjective complaints of pain, since he was found to suffer impairments which could and likely would cause the kind of pain he claims in this case. (Pl's Brief, pp. 15-19.) Moreover, plaintiff points out that his neurologist, Sana L.

3

Bloch, M.D., concluded on several occasions that he was "totally" disabled. (Pl's Brief, pp. 16-17.)

The undersigned does not find plaintiff's argument compelling. First, the regulations clearly reserve findings of disability to the Commissioner.[4] *See* 20 C.F.R. § 404.1527(e)(1); *Morgan v. Barnhart*, 142 Fed. Appx. 716, 721-22 (4th Cir. 2005) (unpublished). Furthermore, plaintiff acknowledged during the November 17, 2004 supplemental hearing that, since his alleged date of disability onset, he had traveled only once to New York to see Dr. Bloch.[5] (R. 264.) Moreover, Dr. Bloch's opinion that plaintiff was disabled is not consistent with his own medical records. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996)(holding that if a physician's opinion is inconsistent with other substantial evidence, it may be accorded significantly less weight). For instance, on May 9, 2000, Dr. Bloch noted that, although plaintiff reported having "severe pain and discomfort," he declined a recommended epidural injection.[6]

---

[4] As the Commissioner points out in his brief, Dr. Bloch, a neurologist in New York, was treating plaintiff in connection with a workman's compensation claim. (Commissioner's Brief, p. 13.) Thus, Dr. Bloch's finding that plaintiff was "disabled" was determined under standards applicable to claims for workers' compensation, which may be informative but are not dispositive in this context. *See* 20 C.F.R. § 404.1504.

[5] In his November 14, 2003 Memorandum Opinion, Judge Conrad noted with some apparent interest that, although plaintiff alleged that his severe pain precluded him from sitting for any period of time, he had traveled to New York to see Dr. Bloch. (R. 277.)

[6] It is well-settled that benefits may be denied when a claimant unjustifiably refuses recommended treatment. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Additionally, failure to follow a doctor's recommended treatment lends weight to a finding of no disability. *See English v. Shalala*, 10 F.3d 1080, 1084 (4th Cir. 1993.) The undersigned finds it noteworthy that Judge Conrad found that "there is some merit in the Law Judge's observation that [plaintiff] has declined a medical procedure and pain medications which could be expected to relieve some of his symptoms." (R. 276-277.)

4

(R. 185.) Also, while Dr. Bloch opined on August 25, 2000, that plaintiff was "permanently and totally disabled," he *prescribed no pain medication* and noted that plaintiff was *not taking any pain medication*. (R. 182.) Finally, as the Law Judge noted, and is evident from the record, plaintiff's back condition improved over time, and Dr. Bloch's treatment records do not extend beyond February 1, 2001. (R. 150.)

Plaintiff further contends that the Law Judge's decision to discount his complaints of pain on the basis that he did not regularly seek medical attention was erroneous. (Pl's Brief, p. 17.) Plaintiff argues that he did not seek regular treatment for his disabling back pain because he lacked insurance and insufficient resources to afford treatment. (Pl's Brief, pp. 17-18.) While a claimant's lack of resources may be sufficient to set aside a denial of benefits based upon any failure to follow prescribed treatment, something more than a claimant's bald statement about his/her financial status must be evident in the record. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Here, there is no evidence that plaintiff did anything more than infrequently seek medical attention for which he was prescribed conservative treatment.[7] There is nothing to show he was turned away from medical attention or treatment because of any lack of resources. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003)(the court found that although the claimant's mother cited lack of insurance as a reason for not pursuing treatment, there was no evidence that the claimant or her mother attempted to obtain treatment and were denied treatment because of insufficient funds or insurance). As stated above, there also is evidence that he

---

[7]For example, on August 25, 2000, July 13, 2001, June 15, 2002, October 26, 2002, and May 8, 2003 plaintiff was taking *no pain medication*. (R. 176, 182, 366, 391, 402.) Also, he was taking *only over-the-counter pain medication* on March 7, 2001, November 19, 2002, November 21, 2002, May 30, 2003, November 15, 2003, August 10, 2003, and April 18, 2004. (R. 151, 332, 346, 352, 360, 377, 383.)

5

declined treatment when offered.

In addition, the supplemental medical evidence from the May 26, 2004 neurological consultation provides substantial support for the Law Judge's finding that plaintiff's allegations of disabling pain were inconsistent with the record as a whole. (R. 277, 304-311.) Victor Owusu-Yaw, M.D., the consultant, found that plaintiff walked without an assistance device, that his gait and coordination were intact, that he did not have an antalgic gait[8], that his ability to walk on his heels and toes could not be assessed because he refused to try, that his motor strength was 5/5, that his muscle bulk and tone were normal, and that his reflexes and sensory examination were normal. (R. 305.) Dr. Owusu-Yaw further found that although plaintiff's range of motion in his dorsolumbar spine was limited, the range of motion in his cervical spine, shoulder, elbow, hip, hand-finger, knee, ankle, and wrist were normal. (R. 306-307.) Dr. Owusu-Yaw concluded that plaintiff occasionally could lift/carry twenty-five pounds, frequently could lift less than ten pounds, could stand and/or walk less than two hours in an eight-hour workday, had limited use of lower extremities, and that he would need a job which allowed him to periodically alternate between sitting and standing. (R. 308-309.)[9]

The consulting evidence also is consistent with the opinions of other record reviewing physicians. (R. 158-164.) On April 6, 2001, the record reviewing physician concluded that

---

[8]The term "antalgic gait" refers to a posture or gait assumed in order to avoid or lessen pain.

[9]As will be referenced below, these findings eventually were the basis of questions by the Law Judge to the VE, upon which the VE opined that the job of security supervisor, as well as other security positions would be available to plaintiff. (R. 218, 265-267.) The VE also testified, and the Law Judge noted, that plaintiff's RFC also allowed him to perform the unskilled, sedentary jobs of assembly and hand packing. (R. 218, 266-267.)

plaintiff's allegations about his condition were only "partially credible." (R. 159.) The physician opined that plaintiff could perform light exertional work and stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; and he could sit, with normal breaks, for a total of about six hours in an eight-hour workday. (R. 159.) On June 13, 2001, another record reviewing physician agreed with the April 6, 2001 assessment. (R. 164.) Thus, the Law Judge's finding that plaintiff's claims of disabling pain were inconsistent with and belied by the objective medical evidence of record is supported by substantial evidence.[10]

Next, plaintiff argues that the Law Judge erred in finding that he could return to his past relevant work because he cannot perform the work as he actually performed it. (Pl's Brief, pp. 19-21.) In that regard, the Social Security regulations define past relevant work as work "as the claimant actually performed it or *as generally performed in the national economy.*" 20 C.F.R. § 404.1560(b)(2)(emphasis added). The Law Judge, therefore, did not err in considering whether plaintiff could perform his past relevant work as it is performed in the national economy. In this connection, the Law Judge found that plaintiff had the RFC to perform light exertional work, stand for up to two hours during the course of a workday, alternate sitting with standing throughout the workday at will, limit use of his lower extremities for pushing and/or pulling or for operating any foot controls, and never kneel, crouch or crawl. (R. 216, 220.) The vocational expert (VE) who was present at the hearing testified that, as generally performed and as found in the Dictionary of Occupational Titles (DOT), plaintiff's past relevant work as a security supervisor was skilled and sedentary. (R. 264-266.) He was of the view that plaintiff could

---

[10] It is noteworthy that on November 14, 2003, Judge Conrad found that plaintiff had not met his burden of proof. (R. 277.)

7

perform his past relevant work as a security supervisor as it is performed in the national economy. (R. 265-266.) For these reasons, the undersigned is of the opinion that the Law Judge's decision finding plaintiff able to return to his past relevant work is supported by substantial evidence.

Therefore, it is RECOMMENDED that an order enter AFFIRMING the Commissioner's final decision, GRANTING the Commissioner's motion for summary judgment and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
U.S. Magistrate Judge

July 17, 2007
Date